IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 07-00411-04-CR-W-HFS |
| CHRISTOPHER TAYLOR, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress evidence seized from his vehicle on January 6, 2006, on the ground that the evidence was seized during an impermissible inventory search. I find that defendant was lawfully stopped and his car was lawfully searched to inventory its contents prior to towing. Therefore, defendant's motion to suppress evidence should be denied.

*I.  BACKGROUND*

On December 6, 2007, an indictment was returned charging defendant with conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On July 7, 2008, defendant filed a motion to suppress (document number 89, 90) arguing that the drugs in his car were found during an illegal inventory search. On August 20, 2008,

the government filed a response (document number 106) arguing that the search of defendant's car was conducted in accordance with Kansas City, Missouri, Police Department policy.

On September 16, 2008, I held an evidentiary hearing on defendant's motion to suppress. The government appeared by Assistant United States Attorney Catherine Connelly. The defendant was present, represented by Charles Eblen and Robert Warren. The following witnesses testified:

1. Detective Eric Greenwell, Kansas City, Missouri, Police Department ("KCMOPD");

2. Detective Tiffany Gillespie, KCMOPD; and

3. Captain Robin Houston, KCMOPD.

In addition, the following exhibits were marked and admitted into evidence:

P. Ex. 1   KCMOPD policy and procedure on towing and protective custody of vehicles and contents

P. Ex. 2   KCMOPD procedural instruction for detaining and questioning persons under arrest

P. Ex. 3   Police report of January 6, 2006, stop

P. Ex. 4   Tow-in report dated January 6, 2006

P. Ex. 5   Request to hold/save videotape form

P. Ex. 6   Patrol video hold release

P. Ex. 7   Record of municipal offenses as of January 6, 2006

P. Ex. 8   KCMOPD property inventory list

D. Ex. 1   KCMOPD arrest report form

D. Ex. 2   KCMOPD tow report

2

    D. Ex. 3  KCMOPD continuation report

    D. Ex. 4  KCMOPD policy and instructions for towing/protective custody of vehicles and contents

    D. Ex. 5  KCMOPD police and instructions for detaining and questioning persons/arrest/search and seizure

    D. Ex. 6  Proof of car insurance for Christopher Taylor

    D. Ex. 7  Kansas Department of Revenue Motor Vehicle Report

    D. Ex. 8  Notice of dismissal of traffic violation

    D. Ex. 10 A-R: Photographs

    D. Ex. 11 KCMOPD Request to hold/save videotape form

    D. Ex. 12 KCMOPD policy and instructions for in-car video camera procedures

    D. Ex. 13 KCMOPD patrol bureau memorandum for mandatory holding of in-car video

Subsequent to the hearing, on October 1, 2008, defendant filed supplemental briefing suggestions (document number 119).

## *II. EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. Kansas City, Missouri Police Department Sergeant Eric Greenwell was the leader of a surveillance team working with the Drug Enforcement Agency on a wiretap case involving Valencia and Marvin Locket (Tr. at 6). As leader, Sergeant Greenwell was notified when calls came into the wire room suggesting there may be movement that could be surveilled (Tr. at 7, 18). When Sergeant Greenwell received such information, he developed a

3

strategy and implemented a plan with the rest of the team (Tr. at 7).

2. On January 6, 2006, Sergeant Greenwell received information from Task Force Officer Bill Smith that the team had intercepted a call that Valencia and Marvin Locket were involved in a drug transaction and that they believed the subject was defendant (Tr. at 6, 7-8, 21). The transaction was to take place at 1810 East 68th Street (Tr. at 8, 11, 21-22).

3. Sergeant Greenwell went to 7239 Tracy, a location that their information indicated Valencia Locket may be (Tr. at 8). At approximately 3:00 p.m., they located Marvin Locket's vehicle at the Tracy address (Tr. at 8). Sergeant Greenwell surveilled the vehicle and eventually followed it to 1810 East 68th Street (Tr. at 8). Valencia Locket exited the vehicle and entered the residence (Tr. at 9).

4. Sergeant Greenwell continued to maintain surveillance on 1810 East 68th Street; he was positioned six or seven houses away (Tr. at 9, 18). A 1993 green Chevrolet 1500 truck stopped at the residence, and Sergeant Greenwell observed defendant exit the vehicle and go into the residence (Tr. at 9, 10). Defendant did not have anything in his hands (Tr. at 10). When defendant exited the residence and reentered the truck, he had a white bag in his hands (Tr. at 10). The bag was later determined to contain cocaine (Tr. at 20).

4

5. Sergeant Greenwell requested that a patrol officer conduct a traffic stop based on the suspicion of drugs being located in the truck (Tr. at 11, 12). Sergeant Greenwell told the officers about the possible drug transaction and instructed them to look for a traffic violation so that they could perform a stop (Tr. at 13, 14, 23).

6. Kansas City, Missouri Police Detective Tiffany Gillespie[1] was a patrol officer on January 6, 2006 (Tr. at 25-26). As part of her training, Detective Gillespie was instructed on the Kansas City, Missouri Police Department's policies on towing and protective custody of vehicles and contents and detaining and questioning persons under arrest (Tr. at 26-27).

7. Detective Gillespie and her partner, Officer Stokes,[2] responded to Sergeant Greenwell's request for a traffic stop on January 6, 2006 (Tr. at 27-28, 67). She testified that Sergeant Greenwell informed them that the driver of a green 1500 Chevrolet was seen in a narcotics transaction and that the narcotics were believed to be in the vehicle (Tr. at 28-29, 82).

8. Detective Gillespie observed defendant fail to use his turn signal when turning onto Bannister Road from I-435 (Tr. at 29, 50; P. Ex. 3; D. Ex. 1). She also observed defendant change

---

[1] On January 6, 2006, Detective Gillespie's last name was Davis (Tr. at 47).

[2] Officer Stokes's last name is now Renti (Tr. at 67).

5

lanes without signaling (Tr. at 29, 65; P. Ex. 3; D. Ex. 1). As a result, Detective Gillespie activated the lights and sirens on her patrol car and stopped defendant near Bannister and I-435 (Tr. at 13, 30, 66; P. Ex. 3; D. Ex. 1).

9. When Detective Gillespie activated the lights and sirens, the video camera in the patrol car was activated (Tr. at 35, 66).

10. Detective Gillespie exited the patrol car and approached defendant; Officer Stokes approached the passenger's side of the vehicle (Tr. at 30, 67; P. Ex. 3). Defendant was the only individual in the truck (Tr. at 31). Detective Gillespie identified herself and informed defendant he had been stopped for failing to use his turn signal when changing lanes and turning onto Bannister Road (Tr. at 31-32, 69; P. Ex. 3).

11. Detective Gillespie asked defendant for his driver's license and insurance (Tr. at 32). Defendant produced a valid Kansas driver's license and an expired insurance card (Tr. at 32, 69; D. Ex. 7).

12. A computer check revealed defendant did not have any outstanding warrants (Tr. at 32, 71).

13. Detective Gillespie testified it is illegal for an individual to drive in the State of Missouri without insurance (Tr. at 33). Accordingly, defendant was issued citations for

6

failing to use his turn signal when changing lanes and for not having a valid insurance card (Tr. at 33; P. Ex. 3).

14. Upon receiving the citation, defendant informed Detective Gillespie that he had valid insurance although he was unable to provide it to her (Tr. at 34). Detective Gillespie did not recall if defendant reached into the glove box (Tr. at 34, 53-54). Defendant later produced a valid insurance card and the charge was dropped (See D. Ex. 6).

15. Defendant was ultimately arrested and taken into custody for the traffic violations (Tr. at 31, 34, 79; P. Ex. 3). Detective Gillespie testified she normally would not take an individual into custody for these types of traffic violations (Tr. at 73).

16. After being arrested, defendant was transported away from the scene (Tr. at 74). Defendant was not given the option to (a) release his vehicle to another driver, (b) provide authorization to waive leaving his vehicle at the scene, or (c) drive his vehicle to the Metro Patrol Division (Tr. at 79). He was not afforded these options because Detective Gillespie believed the vehicle had been used in a crime involving narcotics (Tr. at 80).

17. An inventory search was conducted prior to defendant's truck being towed (Tr. at 31, 35). Detective Gillespie testified the search was conducted in compliance with Kansas City, Missouri

7

Police Department policy (Tr. at 36, 40, 76). She specifically relied on the Department's Policy on Towing/Protective Custody of Vehicles and Contents, Section A, which states "A vehicle will be towed when the vehicle is known to have or believed to have been used in the commission of a crime as evidentiary value," to justify the inventory search (Tr. at 36-37; P. Ex. 1; D. Ex. 4). Based on the information given to her by Sergeant Greenwell, Detective Gillespie believed defendant's truck had been involved in the trafficking of narcotics (Tr. at 37-38). Detective Gillespie also relied on the Kansas City, Missouri Police Department Policy on Detaining and Questioning Persons - Arrest, Search and Seizure, Annex D, Paragraph 2, which states, "When officers have probable cause to believe a vehicle which is readily movable, contains articles which are entitled to be seized and for which a warrant can be obtained, i.e., contraband, the entire vehicle may be searched for such articles without obtaining a search warrant" (Tr. at 39-40; P. Ex. 2; P. Ex. 5).

 18. The inventory search was performed because defendant had been arrested and taken from the scene, and also because Detective Gillespie had information that the truck contained contraband (Tr. at 78).

 19. At the time defendant was stopped, Detective Gillespie had conducted hundreds of traffic stops (Tr. at 39, 48). She followed this procedure in each one (Tr. at 39). Detective

8

Gillespie testified that of the hundred of traffic stops, more than ten resulted in arrest (Tr. at 48).

20. Detective Gillespie performed a search of defendant's truck (Tr. at 40). The search revealed, inter alia, approximately 74 grams of a white powdery substance in a clear plastic bag (Tr. at 41; P. Ex. 3; D. Ex. 1). She also found tools, clothing, toiletries, and paper inside the truck (Tr. at 41; Gvt. Exh, 8).

21. Kansas City Police Department policy requires officers to write reports following traffic stops (Tr. at 49, 51; P. Ex. 2; D. Ex. 5). The policy mandates that officers include any and all facts that support reasonable suspicion and probable cause (Tr. at 51, 64, 77, 80; P. Ex. 2).

22. Detective Gillespie prepared a report of defendant's traffic violations and arrest (Tr. at 54; P. Ex. 3; D. Ex. 1).

23. Detective Gillespie testified the probable cause supporting the traffic stop was defendant's failure to use his turn signal and failure to provide proof of insurance (Tr. at 53). She did not know why she did not reference her knowledge that drugs were in the truck as probable cause supporting the inventory search (Tr. at 81-82).

24. Shortly after the search was completed, Detective Gillespie also completed a tow-in report (Tr. at 41, 55; D. Ex. 2; P. Ex. 4).

9


25. Kansas City, Missouri Police Department policy requires that the contents of a search be listed in detail and that the officer provide reasons for the search (Tr. at 42, 53). In addition, the Kansas City, Missouri Police Department policy on Towing/Protective Custody of Vehicles and Contents, Page B-3, Paragraph D-2 provides, officer should itemize large quantities of valuable tools (Tr. at 60-62; Gvt, Exh. 1; D. Ex. 4).

26. Detective Gillespie did not itemize or list the value of the numerous tools located in defendant's truck but, rather, listed "miscellaneous tools" in the tow-in report (Doc. No. 42, 55-56; P. Ex. 4; D. Ex. 2). She testified she did so because there were so many tools and she did not believe she could accurately identify each one (Tr. at 42). Detective Gillespie believed that since she could not be accurate with regard to the tools she should just summarize (Tr. at 43). She stated she also did so to protect the owner of the items as well as the Kansas City Police Department (Tr. at 43).

27. Detective Gillespie testified that it could not be determined how many tools defendant had in his truck based on the description in her tow-in report (Tr. at 57-58).

28. Defendant testified he had hundreds of tools and four toolboxes in his truck when he was stopped (Tr. at 110-111, 115; D. Ex. 10C-10R). He did not contend that any of his tools were

10

missing as a result of the January 6, 2006, traffic stop and subsequent search (Tr. at 114).

29. The video camera in Detective Gillespie's patrol car captured her approaching defendant's truck, returning to the patrol car, running a computer check, returning to defendant's truck and placing him under arrest, conducting the inventory search, as well as defendant's demeanor throughout the incident (Tr. at 35-36, 68). The video would have shown if defendant had reached into the glove box (Tr. at 54). Because Detective Gillespie was wearing a microphone, the videotape would have also any contained dialog with defendant (Tr. at 68-69).

30. Detective Gillespie requested that the videotape of the incident be retained for evidentiary value (Tr. at 43, 44; P. Ex. 5; D. Ex. 11). This request was consistent with Kansas City, Missouri Police Department policy (Tr. at 43; D. Ex. 12; D. Ex. 134).

31. The Kansas City, Missouri Police Department policy on Department Owned Video Cameras and Tapes and In-Car Video Camera Procedures requires that videotapes be retained for one year (Tr. at 87, 99-100; D. Ex. 12). When a hold/save request form is completed by an officer, the videotape is assigned a number and the hold/save request is wrapped around the videotape (Tr. at 87-88). The videotape is then taken to the patrol video section where it is stored for one year (Tr. at 87, 88, 89). After the

11

first year, the video is sent to the specific unit within the Department to ascertain whether the videotape can be destroyed (Tr. at 87, 89).

32. Robin Houston was the sergeant over the Administrative Squad in the Drug Enforcement Unit in January of 2006 and for at least a year thereafter[3] (Tr. at 86, 88). In this position, she was responsible for reviewing the video hold release requests and property disposals that went to the Drug Enforcement Unit and deciding whether to keep holding the video or to release it (Tr. at 86-87, 89, 92-93). Upon receiving a request, Captain Houston checks the database to see if the videotape is associated with an active case (Tr. at 93). She does not normally reach out to the federal investigatory bodies to learn if they have an open case unless there is information they are involved; it is not Kansas City, Missouri Police Department Policy to contact all agencies (Tr. at 95-96, 103).

33. The videotape of the traffic stop on January 6, 2006, involving defendant was assigned an identification number of 9848 (Tr. at 45, 90).

34. On February 9, 2009, Captain Houston received a patrol video hold or release request regarding videotape number 9848 (Tr. at 91; P. Ex. 6). The form stated the video was being held

---

[3]She is currently a Captain within the Kansas City, Missouri Police Department and will therefore be referred to as "Captain Houston" in this Report and Recommendation.

12

for the Drug Enforcement Unit, and did not reference the DEA or defendant being a career criminal (Tr. at 92-93, 97; Gvt, Exh, 6). Captain Houston checked the Drug Enforcement Unit's database and the database did not show there was an active case (Tr. at 93-94). She ran defendant's name through the ALERT System, which shows whether there are pending cases against individuals, and did not find any active charges with regard to the February 9, 2009, incident (Tr. at 94-95, 97). Captain Houston did not check with the Career Criminal Unit (Tr. at 95).

 35. Captain Houston ordered that the videotape be destroyed (Tr. at 98; P. Ex. 6). Captain Houston testified the destruction of the videotape was consistent with Kansas City, Missouri Police Department video processing policies (Tr. at 98). At the time she ordered the destruction, she did not know there was an active DEA case (Tr. at 97-98). Furthermore, she had never heard of Marvin and Valencia Locket (Tr. at 104). Captain Houston testified that had she know of the ongoing investigation, the videotape would not have been destroyed (Tr. at 98, 104).

 36. Captain Houston testified more information on the hold/save request form may have helped ensure the videotape was preserved (Tr. at 102). She further testified the Kansas City Police Department could do a better job of training its officers to use more specific information on the hold requests (Tr. at 102). She also stated the Department is changing to paperless

13

reporting which will help making more information accessible on the computer (Tr. at 102).

### *III. DEFENDANT'S STOP*

A law enforcement officer who observes a traffic offense, however minor, has probable cause to stop the driver of a vehicle. United States v. Williams, 429 F.3d 767 (8th Cir. 2005); United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004); United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003); United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Woodall, 938 F.2d 834 (8th Cir. 1991); United States v. Cortez, 935 F.2d 135, 142 (8th Cir. 1991). A law enforcement officer can even lawfully stop an automobile merely to warn the driver of a traffic violation. United States v. Webb, 533 F.2d 391 (8th Cir. 1976); United States v. Geelan, 509 F.2d 737, 743-44 (8th Cir. 1974), cert. denied, 421 U.S. 999 (1975).

Stopping a vehicle for failing to signal before turning is permitted. United States v. Davis, 457 F.3d 817, 821-822 (8th Cir. 2006), cert. denied, 127 S. Ct. 1386 (2007); United States v. Rodriguez-Lopez, 444 F.3d 1020, 1023 (8th Cir. 2006). Even if the driver has stopped the car and exited the vehicle before the officer has an opportunity to make the stop, the officer can still stop the individual on foot for the traffic offense. Thornton v. United States, 541 U.S. 615 (2004).

14

Defendant argues that the police stopped defendant because they believed he had drugs in his car. To determine whether a stop is pretextual, an objective assessment of the officer's actions must be made. Woodall, 938 F.2d at 837; Cortez, 935 F.2d at 142. In this case, the detectives who first observed defendant believed he had taken part in an illegal drug transaction and that drugs were still in his car. Despite that, Detective Gillespie had an objective and legitimate reason to stop defendant. See Cortez, 935 F.2d at 142. An otherwise valid traffic stop would not be rendered invalid by the fact that it was a mere pretext for a search for something else, such as evidence of illegal drug transactions. Whren v. United States, 517 U.S. 806, 812-13 (1996)(citing United States v. Robinson, 414 U.S. 218, 221 n. 1 (1973)); United States v. Williams, 429 F.3d 767; United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004); United States v. Woodall, 938 F.2d at 837.

I find that Detective Gillespie had a legitimate reason for stopping defendant and therefore the stop was lawful.

## IV. SEARCH OF THE CAR

The Supreme Court has recognized an exception to the warrant requirement for searching a vehicle lawfully impounded by law enforcement officers. Cady v. Dombrowski, 413 U.S. 433, 446-48 (1973). "Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the

15

police," which does not require a warrant. United States v. Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004) (quoting Cady v. Dombrowski, 413 U.S. at 441).

The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy -- even a policy that provides officers with discretion as to the proper course of action to take -- and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). These parameters are designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Petty, 367 F.3d at 1012 (internal quotation omitted).

Law enforcement may search a lawfully impounded vehicle to inventory its contents without obtaining a warrant. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."). The reasonableness of an inventory search is determined based upon the totality of the circumstances. United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005). Those circumstances include whether the search was conducted according to standardized procedures. South Dakota v. Opperman, 428 U.S. at 376.

16

When the driver of a car is arrested, the police may impound the vehicle and conduct an inventory search. United States v. Stephens, 350 F.3d 778 (8th Cir. 2003); United States v. Navarrete-Barron, 192 F.3d 786, 791-92 (8th Cir. 1999).

In State of Missouri v. Hoyt, 75 S.W.3d 879, 833 (Mo. Ct. App. 2002), the Missouri Court of Appeals held that "[t]he fact that the driver of the vehicle did not have proof of insurance provided [the officer] with a reason to arrest the driver and perform an inventory of the vehicle." In that case, the driver was pulled over because it was believed that the tags on his car were expired. The officer had received information from a local Wal-Mart that the individuals in the car had each separately purchased items that can be used to manufacture methamphetamine. Once the car was stopped, the driver was placed under arrest for failure to establish proof of insurance.

Under Eighth Circuit law, when the driver of an automobile is arrested, the police may impound the vehicle and conduct an inventory search. United States v. Stephens, 350 F.3d 778 (8th Cir. 2003). Kansas City Police Officer Tiffany Gillespie lawfully arrested defendant for failure to provide a valid proof of insurance which, according to Missouri law, is an offense for which a driver can be placed under arrested. Missouri v. Hoyt, 75 S.W.3d at 833. Finally, the Kansas City, Missouri, Police Department's policy on towing vehicles permits the impoundment

17

and inventory search of a car under the circumstances of this case.  Under "General Towing Requirements" the first entry reads as follows:

> Vehicles will be towed when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value, unless it is processed at the scene and can be released to the owner/operator.

(P. Ex. 1, p. 4, paragraph A).

In this case, the police had intercepted a conversation indicating that Valencia and Marvin Locket were involved in a drug transaction, the subject was defendant, and the transaction was to take place at 1810 East 68th Street.  Police watched Valencia Locket drive to the East 68th Street residence and go inside; then they saw defendant arrive and go into the residence empty-handed; and finally they observed defendant come out of the residence, carrying a white bag, and get into his vehicle. Police therefore reasonably believed that defendant's vehicle was being used in the commission of the crime of illegal drug possession and/or distribution.  Under these circumstances, police were authorized under the Kansas City, Missouri, Police Department's policy to either search the car at the scene or tow it to an impound lot and search it there.

Because (1) defendant was lawfully stopped for failing to use a turn signal and changing lanes without signaling, (2) he was lawfully arrested for failure to provide proof of insurance

18

on demand,[4] and (3) the decision to impound was guided by a standard policy, I find that defendant's constitutional rights were not violated when the police searched his vehicle.

## VI. CONCLUSION

Based on the above-stated findings of fact and the law as discussed in sections III and IV, I conclude that defendant was lawfully stopped; he was lawfully arrested for failure to provide valid proof of insurance; and his car was lawfully searched in accordance with the Kansas City, Missouri, Police Department's policy on towing. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence and any fruits thereof.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 24, 2009

---

[4] Although defendant argued through cross examination that he had valid proof of insurance in his glove compartment, there was no evidence presented as to this fact. The evidence presented was that defendant produced an expired insurance card. Defendant provided no authority for his insinuation that a driver must be afforded an opportunity to search his car for a valid insurance card after having produced an expired one.

19