IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

```
UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )     Criminal Action No.
                               )     07-00411-04-CR-W-HFS
CHRISTOPHER TAYLOR,            )
                               )
          Defendant.           )
```

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS WIRETAP EVIDENCE**

Before the court is defendant's motion to suppress wiretap evidence on the ground that the government lacked probable cause to list defendant as a target subject and the government failed to satisfy the "necessity requirement" of 18 U.S.C. § 2518. I find that the affidavit in support of the wiretap established probable cause and necessity. Therefore, defendant's motion to suppress wiretap evidence should be denied.

*I.   BACKGROUND*

On December 6, 2007, an indictment was returned charging defendant with conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On October 1, 2008, defendant filed the instant motion to suppress wiretap evidence (document number 117, 118). On October 10, 2008, the government filed a response (document number 138)

arguing that the Title III application was supported by probable cause, and the wiretap was necessary.

On October 17, 2008, I held an evidentiary hearing on defendant's motion to suppress. The government appeared by Assistant United States Attorney Justin Davids. The defendant was present, represented by Charles Eblen. DEA Special Agent Ben Post testified, and D. Ex. 1, the affidavit in support of the wiretap application, was admitted.

## II.  EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. The Drug Enforcement Administration identified defendant through pen register data and subpoenaed phone records (Tr. at 7). They then ran criminal history checks on defendant (Tr. at 7).

2. The wiretap application in this case sought to intercept conversations on phones belonging to the Locketts, not defendant's phone (Tr. at 9). Defendant was named in the affidavit as a potential co-conspirator (Tr. at 9). Special Agent Post did not ascertain whether plaintiff had ever lawfully worked with Marvin Lockett before the wiretap application was presented to the court (Tr. at 9-10).

2

## III. NECESSITY

The necessity requirement of § 2518 insures "'that wiretaps are not routinely employed as the initial step in an investigation.'" United States v. Thompson, 210 F.3d 855, 858-859 (8th Cir. 2000) (quoting United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994)). To satisfy the requirement, an application requesting a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); United States v. Jackson, 345 F.3d 638, 644 (8th Cir. 2003).

The court in United States v. Jackson, 345 F.3d at 644-645, explained the necessity requirement as it pertains to drug conspiracies:

> The wiretap was requested for the purpose of discovering the full scope of the conspiracy, the full extent of the criminal activities, and to identify and successfully prosecute each member of the organization. If law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied. Agent Gray's affidavit states, with detail, the conventional investigative techniques utilized by law enforcement officers over a period of several years. The methods included surveillance, confidential informants, trash collections, pen registers and toll record information, grand jury subpoenas, search warrants, and witness interviews. The affidavit indicates the difficulties law enforcement officers encountered and explained why the investigative methods which were attempted failed to discover the full scope of the conspiracy. For

3

instance, physical surveillance was largely unsuccessful
because Jackson generally appeared to be aware of the
presence of the officers; trash collections had been
attempted with successful results but were not likely to
establish the extent of the conspiracy; and confidential
informants were proving to be of limited value because they
were providing historical information, were presently
incarcerated, or were refusing to cooperate.

Traditional investigative techniques had undoubtedly
provided law enforcement officials with sufficient evidence
to pursue prosecution of Washington and Jackson for drug-
related offenses. Trash collections had provided evidence of
drug possession and distribution, and informants had made
controlled purchases from Washington and provided valuable
insight into the organization. Had the purpose of the
wiretap been to investigate the illegal activities of only
Washington or Jackson, a necessity finding would have been
erroneous. However, the facts of this case do not present
such a situation. The focus of this application was upon the
conspiracy itself, not merely those individuals who were
involved and the government adequately established their
need for a wiretap. The district court's necessity finding
was not clearly erroneous and the motion to suppress was
properly denied.

In this case, the affidavit states that DEA agents wanted the wiretap because they needed to learn the scope of the drug trafficking organization they were investigating, and they wanted to obtain the knowledge with which to attempt to intercept drugs and money. The affidavit states that drug dealers use pre-paid cellular telephones which often do not require subscriber information, they frequently exchange telephone devices, they use multiple communication devices, and they subscribe to telephone service using false names.

The affidavit states that this drug organization was high level closed, meaning the participants were very guarded about

4

whom they trust. This made confidential informants and undercover agents ineffective. In the past when an associate or source was arrested, the targets of the investigation would immediately dissolve the relationship and change all phone numbers which closed off any possibility of using an informant. Law enforcement had attempted to develop confidential sources without success.

Surveillance had been largely unsuccessful because the targets became evasive and unusually cautious in their movements. Search warrants would be ineffective because the targets were on parole and knew a parole officer could make unannounced inspections of the residences; therefore, it was highly unlikely drugs would be kept at the targets' residences. Trash searches had been done but had not resulted in significant insight into the drug trafficking organization.

Interviews with drug traffickers and their customers would not be productive because of the individuals' fear for their safety, the safety of their families, and their own culpability.

Based on all of the above, I find that the an application requesting the wiretap order included a full and complete statement as to whether or not other investigative procedures had been tried and failed or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous. As was the case in United States v. Jackson, supra, the focus of the

5

investigation was the conspiracy, not any individual defendant. The government adequately established the need for the wiretap to discover the scope of the conspiracy and to enable the government to seize drugs and money used in drug transactions. Therefore, the motion to suppress wiretap evidence on the ground that the necessity requirement had not been met should be denied.

## IV.   PROBABLE CAUSE

Defendant next argues that the affidavit does not establish probable cause that he was committing a particular offense.

The procedures for the authorization of electronic surveillance are found in 18 U.S.C. § 2518. As to probable cause, the statute provides that a judge may authorize a wiretap upon a determination that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter," Id. § 2518(3)(a), and that "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." Id. § 2518(3)(b).

The probable cause showing required by section 2518 for electronic surveillance does not differ from that required by the fourth amendment for a search warrant. United States v. Macklin, 902 F.3d 1320, 1324 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991); United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir.), cert. denied, 488 U.S. 932 (1988); United States v. Townsley, 843

6

F.2d 1070, 1076 (8th Cir. 1988). The Supreme Court has clearly delineated the standard which an issuing judge must follow in determining whether probable cause supports a warrant, as well as the duty of a reviewing court. In the wiretap context, the issuing judge must make a practical, commonsense decision that there is a fair probability that the person is committing an offense and that particular communications concerning that offense will be obtained through the requested wire interception. <u>United States v. Macklin</u>, 902 F.3d at 1324.

The affidavit states that two numbers, subscribed to by Marvin Lockett, were used during calls that were intercepted on separate wiretap orders. Those calls pertained to illegal drug transactions. Defendant was listed in the affidavit as a person whose communications on these numbers should be intercepted. Defendant was identified through a pen register on both of the telephone numbers, having called or been called from these numbers a total of 106 times over a five-month period.

The Narcotic and Dangerous Drugs Indexing System ("NADDIS") lists defendant as being a distributor of pound quantities of cocaine and being involved in armed robbery. In 1987 defendant sold a DEA confidential source and a DEA Special Agent approximately 90 grams of cocaine. Defendant was arrested and convicted of selling cocaine in 1988. Defendant has prior convictions for distribution in 1993 and 1994, for being a felon

7

in possession of a firearm in 2002, and for possession of controlled substances in 2002.

The affidavit states that on October 29, 2005, Bryant Griffin-Bey called Marvin Lockett to discuss setting up what investigators believed was a drug sale of ten ounces of cocaine to an unknown third party, thought to be defendant. Through previous wiretaps in Texas and Kansas, law enforcement knew that Griffin-Bey and Lockett were involved in a drug distribution business. Authorities intercepted another conversation between Griffin-Bey and Lockett on October 31, 2005, and discussed the transaction for ten ounces of cocaine. Immediately thereafter, defendant was picked up on pen registers calling both numbers affiliated with Lockett. Later in the day, defendant called Lockett again. Authorities believed that defendant was to take part in this cocaine transaction.

I find that this information establishes a fair probability that defendant was committing an offense and that particular communications concerning that offense would be obtained through the requested wire interception. Defendant argues that there is nothing illegal about him calling someone; however, the Supreme Court has held that a series of innocent actions can combine to form a reasonable belief that a crime is being committed. United States v. Sokolow, 490 U.S. 1, 9 (1989). The timing of the calls, i.e., when Lockett was attempting to arrange a cocaine

8

transaction, coupled with defendant's history as a cocaine distributor establish probable cause that defendant was committing the offense of conspiracy to distribute cocaine. The fact that the transaction was being coordinated over both of the telephone lines which are the subject of the current wiretap order establishes probable cause that particular communications concerning the cocaine offense would be obtained through the requested wire interception.

## *V.  CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III and IV, I conclude that the affidavit in support of the wiretap established probable cause and necessity. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress wiretap evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 13, 2009

9